ARSHAK BARTOUMIAN (SBN 210370)
OMNIA LEGAL, INC
124 WEST STOCKER STREET STE "B"
GLENDALE, CALIFORNIA 91202
TEL. 818-532-9339
EMAIL: DISPUTES@OMNIALEGAL.ORG

Attorney for Plaintiff KarenVahanyan

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

KAREN VAHANYAN an Individual

      Plaintiff,

   vs.

UNIFUND CORPORATION, An Ohio

Corporation. *et, al.*

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 2:12-cv-01849-DMG-(CWx)

**PLAINTIFF'S OPPOSITION TO DEFENDANT THE MOORE LAW GROUP APC'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Date: July 13, 2012**
**Time: 9:30 am**
**Courtroom: 7 – Second Floor**
**Judge: Hon. Dolly M. Gee**

## I.    INTRODUCTION

Plaintiff, KAREN VAHANYAN ("Plaintiff"), respectfully submits this Opposition to Defendant The Moore Law Group APC's ("TMLG") Motion For Summary Judgment. As filed, Plaintiff's Complaint raised the following claims against TMLG:

(1)    That TMLG willfully and/or negligently violated the Fair Credit Reporting Act ("FCRA") and California's Consumer Credit Reporting Agencies Act ("CCRAA"), by obtaining Plaintiff's consumer reports without permissible purpose as defined under FCRA, 15 U.S.C. §1681b and CCRAA, Cal. Civ. Code §1785.11.

(2)    That TMLG violated the FDCPA, 15 U.S.C. §1692*et seq.* and RFDCPA, Cal. Civl Code §1788.17, by failing to provide to Plaintiff written notice of debt and disclosures of Plaintiff's rights, including the right to verification, prior to its credit reviews or at all, in connection to any alleged debt TMLG considered pursuing

collections on, and further by using the credit reviews as unfair and unconscionable means to obtain information to aid in its decision to pursue collections.

(3)     That TMLG has committed intentional torts of Defamation by Libel and Invasion of Privacy/False Light against Plaintiff by attaining access into Plaintiff's credit file for no legitimate reason and reviewing confidential personal and financial information about Plaintiff, in effect leaving multiple credit inquiries that negatively reflected upon Plaintiff as a consumer and borrower.

Contrary to TMLG's assertions, genuine issues of fact exist about whether TMLG had any permissible purpose for accessing Plaintiff's consumer credit reports on October 6, 2010, whether Plaintiff owed or owes any alleged debt to the alleged original creditor and whether TMLG lawfully acquired ownership or any right to collect, or attempt to collect any alleged debt from Plaintiff at the time of its credit inquiries or at all.

## II.     STANDARD OF REVIEW

For Summary Judgment, the Court must inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." See *Creighton v. Emporia Credit Services, Inc*. 981 F. Supp. 411, 415 (E.D. Va. 1997), quoting *Anderson*, 477 U.S. at 251-52, 106 S. Ct. at 2512, 91 L. Ed. 2d 202 (1986). When the record taken as whole could not lead a rational trier of fact to find for non-moving party, disposition by summary judgment is appropriate.  *U.S. v. National Financial Services, Inc.,* 98 F.3d 131, 135 (4th Cir. 1996).

## III.     ARGUMENT

**A. TMLG'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE AN ISSUE OF FACT REMAINS FOR THE IMPERMISSIBLE ACCESS THEORY.**

Whether TMLG had a permissible purpose to access Plaintiff's consumer credit reports on October 6, 2010 is a disputed issue of fact.

**(a). The FCRA provides the only purposes for which consumer reports can be obtained.**

Realizing that there was a pressing need to protect consumer's privacy, in 1970 Congress amended the Consumer Credit Protection Act 15 U.S.C. §1601 et seq., by adding a number of provisions collectively known as the Fair Credit Reporting Act. See *Scharpf v. AIG Marketing, Inc.,* 242 F. Supp. 2d 455, 458 (W.D. Ky. 2003). Upon introduction of the FCRA in 1968, Senator William Proxmire, who may deem the father of the FCRA, declared that regulation of consumer reporting agencies was necessary in order to increase *confidentiality*, *accuracy*, and *currency* of consumer credit information. 114 Cong. Rec. 24903 (Aug. 2, 1968). These three central purposes have remained the hallmark of the FCRA since it became effective in 1970. TMLG through its constant and repeated credit reviews has neglected at least two of these purposes, the confidentiality and accuracy of Plaintiff's credit report by unlawfully accessing and reviewing private information without a legitimate purpose and by putting undeserved and unlawful credit inquiries on Plaintiff's credit file, thereby distracting the accuracy of the credit report.

The FCRA sets forth certain "permissible purposes" for which a person may obtain and use a consumer report. See 15 U.S.C. §1681b(a)(3). See also 15 U.S.C. §1681b(f). Persons may obtain and use a consumer report "*only if they act in accordance with one of these permissible purposes.*" *Scharpf,* 242 F. Supp. 2d at 458. The most familiar and typical "permissible purposes" involve determining eligibility for credit and employment. 15 U.S.C. §1681b(a)(3)(A) and (B).

Except for some minor modifications, the FCRA remained largely intact until 1996. That year, the FCRA was extensively amended by the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"), Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996). Pursuant to the language of the CCRRAA, the amendments to the FCRA went into effect on September 30, 1997. See *Duncan v. Handmaker*, 149 F. 3d 424, 426 fn. 1 (6th Cir. 1998). Among the more

significant amendments was the addition of subsection (f) to §1681b which prohibits obtaining a consumer report without the required permissible purpose.

Prior to the 1996 amendments, there was no express provision in the FCRA prohibiting a person from obtaining or using a consumer report without a permissible purpose. After the FCRA was enacted in 1970, courts noticed what appeared to be a loophole. The original sections 1681n and 1681o only created civil liability for failure to comply with the Act. The original section 1681b, which generally stated the circumstanced under which consumer reporting agencies could provide reports, did not impose a duty on users of reports to refrain from requesting reports without a proper purpose. *Phillips v. Grendahl*, 312 F. 3d 357, 363 (8th Cir. 2002).

Thus, prior to the 1996 amendments, civil actions against the users of information could not be premised on a violation of §1681b. Id. Access to a consumer report is authorized under the provisions of 15 U.S.C. §1681b(a)(2) pursuant to the written authorization of the consumer. Also, a person has a permissible purpose to use a consumer report in connection with a credit transaction under 15 U.S.C. §1681b(a)(3)(A). This provides a permissible purpose for a user who "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer…"

While TMLG attempts to justify its credit review pursuant to 15 U.S.C. §1681b(a)(3)(A), claiming "collection of an account" as its permissible purpose, this is only its subjective view and argument in defense to Plaintiff's claims and is insufficient grounds to for summary judgment in TMLG's favor. TMLG never admits to ownership or authority over the debt or even to definite intent to conduct collections of such debt against Plaintiff at the time of its credit reviews, and yet, attempts to justify its conduct of credit review under "collection of an account" without satisfying the required conditions of the stated permissible purpose. In fact TMLG expressly states that no notices or disclosures concerning its alleged debt were communicated to Plaintiff prior to the credit review and that generally no substantial collection efforts have been made against Plaintiff by TMLG. All TMLG had at the time of its credit reviews was mere

interest and not an actual intent or more importantly a lawful right of ownership and collection of its alleged debt.

TMLG admits to being a "debt collector" on multiple occasions [DEFENDANT THE MOORE LAW GROUP, APC's ANSWER TO PLAINTIFF KAREN VAHANYAN'S COMPALINT ("ANSWER"), ¶44] However, while with respect to Plaintiff's FCRA, CCRAA and FDCPA claims, TMLG admits that it is a "debt collector" and its credit review was made with respect to "collection of an account", TMLG later withdraws its admission of being a debt collector and instead labels itself merely as "attorney or counselor at law", in an attempt to exempt itself from liability under the RFDCPA. Even if we accept TMLG's assertion of being an "attorney or counselor at law" as its primary and sole identity and business purpose and consider the fact that it represented Discover Bank in a lawsuit against Plaintiff, this does not explain what business an attorney, especially one who was the opposing counsel in a lawsuit against Plaintiff, had reviewing Plaintiff's credit file prior to or around the time of its representation in the case.

While Plaintiff does not contend that TMLG is a licensed law office, Plaintiff does contend and has established that TMLG is also a "debt collector" by definition and by its own admission and conduct. TMLG's primary business purpose is debt collection and being a licensed attorney should not be used as a shield to exempt it from the obligations and liabilities of debt collectors. As with respect to the FCRA and CCRAA, whether considered a debt collector, an attorney or both, TMLG's conduct of repeated credit reviews is not justified under any circumstances and TMLG cannot be exempted from liability under fair credit reporting laws, which are imposed on all users of information.

**(b) Based on TMLG's own admissions, statements, and records, a disputed issue of fact exists as to whether TMLG had any permissible purpose to obtain Plaintiff's consumer report.**

In the present case, TMLG admits that it obtained Plaintiff's consumer report on October 6, 2010 but denies pulling the report twice on the same day when it alleges to have obtained Plaintiff's credit report one and only one time on October 6, 2010. [MEMORANDUM OF

POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE MOORE LAW GROUP, APC'S MOTION FOR SUMMARY JUDGMENT] ("MOTION") 4: 25.

TMLG's Motion argues that TMLG was permitted that one access to Plaintiff's consumer report as a "debt collector" for collection on an account of Plaintiff and in connection with an alleged debt owed by Plaintiff to Discover Bank. However, TMLG's claim of permissible access to Plaintiff's consumer report under section 1681b(a)(3)(A) is completely off point, for at least the following reasons:

(1) At the time TMLG obtained Plaintiff's consumer credit report or at all, TMLG was not the creditor or rightful owner of a debt owed by Plaintiff arising from a credit transaction involving the Plaintiff.

(2) At the time TMLG obtained Plaintiff's consumer credit report or at all, as a debt collector, TMLG had not communicated to Plaintiff of the debt or disclosed Plaintiff's rights in that respect.

(3) At the time TMLG obtained Plaintiff's consumer credit report or at all, according to its own admissions, TMLG did not conduct any actual, subsequent collections against Plaintiff.

(4) At the time TMLG obtained Plaintiff's consumer credit report, according to its own admissions, TMLG was not the owner of the debt verified or even alleged to be owed by Plaintiff and did not even have collection rights; rather TMLG was the attorney to Discover Bank to whom the alleged debt was owed to.

(5) At or around the time TMLG obtained Plaintiff's consumer credit report, TMLG was the opposing counsel, representing Discover Bank, in a lawsuit brought against Plaintiff in connection to collection of the very same alleged debt owed by Plaintiff to Discover Bank.

TMLG pulled Plaintiff's consumer report twice on October 6, 2010. However, the alleged credit obligation at issue – for alleged Discover Bank account- was not owned or actually collected on by TMLG. These credit reviews were made to check on the collectability of the debt prior to bringing a lawsuit against him and/or harass Plaintiff and coerce him into payment,

which not only violated Federal and State credit reporting and collection laws but invaded Plaintiff's privacy and resulted in defamatory statements in the form of collection inquiries.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, this Court should deny TMLG's motion for summary judgment.

Dated: July 3, 2012                                    Respectfully submitted,

                                                       By:<u>/s/ Arshak Bartoumian</u>
                                                       Arshak Bartoumian,
                                                       Attorney For Plaintiff

ARSHAK BARTOUMIAN (SBN 210370)
OMNIA LEGAL, INC
124 WEST STOCKER STREET STE "B"
GLENDALE, CALIFORNIA 91202
TEL. 818-532-9339
EMAIL: DISPUTES@OMNIALEGAL.ORG


Attorney for Plaintiff KarenVahanyan


## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAREN VAHANYAN<br>      Plaintiff,<br><br>      v.<br>THE MOORE LAW GROUP<br>A California Professional<br>Corporation, *et. al*<br>      Defendant | ) Case No. 2:12-cv-01849-DMG-(CWx)<br>)<br>)<br>) **PLAINTIFF'S STATEMENT OF GENUINE**<br>) **DISPUTES PURSUANT TO L.R. 56-2**<br>)<br>) Date: July 13, 2012<br>) Time: 09:30 AM<br>) Judge: Hon. Dolly M. Gee<br>) Courtroom: 7-2nd Floor<br>) |

Persuant to L.R. 56-2, Plaintiff Karen Vahanyan hereby submits the following response to Defendant's "Separate Statement of Uncontroverted Facts and Conclusions of Law."

For purposes of this Statement of Genuine Disputes: Plaintiff Karen Vahanyan shall hereinafter be referred to as "Plaintiff;" Defendant The Moore Law Group, APC shall be referred to as "TMLG".

## DEFENDANT'S STATEMENT OF FACTS AND PLAINTIFF'S RESPONSE

1. **Defendant's Statement**: TMLG's records are maintained electronically and in the ordinary course of business. Entries are made at or near time of the event.
   **Plaintiff's Response:** Plaintiff does not know enough fact to admit or deny that Defendant has records maintained electronically and in the ordinary course of its business.

2. **Defendant's Statement:** TMLG is a law firm and exempt from liability under the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") codified at California Civil Code Section 1788 et seq. ("Rosenthal Act").
   **Plaintiff's Response:** MLG is a law firm but its business is largely invested in collection of consumer debts and TMLG even identifies itself as a debt collector on its website as well as it Answer, Motions and other filings made with the courts, except with respect to the claims made under the Rosenthal Act. TMLG is also a member of several Debt Collectors Associations, including Collection Association of America. The Rosenthal act, under Cal. Civ. Code §1788.2(c) identifies "*debt collector*" as "*any person who, in the ordinary course*

*of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.*" By definition, the Rosenthal act exempts an attorney or counselor at law from liability as a debt collector only when such attorney or counselor at law merely "***composes and sells, or offers to compose and sell, forms letters, and other collection media used or intended to be used for debt collection***". The Rosenthal Act does not intend to exempt those whose business purpose and operations are dedicated to debt collection and to those who define themselves as debt collectors, but also happen to be licensed in law, such as TMLG.

3. **Defendant's Statement:** TMLG pulled Plaintiff's credit report one and only one time, on October 6, 2010, and it was with a permissible purpose as associated with the collection of Plaintiff's defaulted and owing Discover credit card account currently ending 9048 ("Account")
   **Plaintiff's Response:** TMLG pulled Plaintiff's credit report not once, but at least twice on October 6, 2010 and both of those inquiries were made without a permissible purpose. The existence or even the validity of TMLG's alleged defaulted account is irrelevant since as TMLG states, the debt was owed to Discover and at the time of TMLG's credit reviews, TMLG lacked ownership over any such debt and had failed, as a debt collector, to communicate to Plaintiff of the existence of such debt. As TMLG further admits, at the time of the credit inquiries or at all, TMLG did not conduct subsequent collections and did not even have definite intent to conduct collections, but rather conducted reviews of Plaintiff's credit file to determine collectability of the alleged debt.

4. **Defendant's Statement:** According to TMLG's records there is a judgment entered against Plaintiff in the related California state court case, Los Angeles County case number 11C00741 in the amount of $9,149.32, for the outstanding principal balance owing on the Account, plus costs of suit.

   **Plaintiff's Response:** The referenced State Action, case number 11C00741, is a lawsuit brought against Plaintiff by Discover, in which TMLG is the representing attorney of Discover and not a party to the lawsuit. This actually proves that TMLG had no ownership or authority to conduct a credit review with respect to the alleged debt owed to Discover. TMLG has failed to explain its business, as opposing counsel, in conducting credit reviews on Plaintiff.

5. **Defendant's Statement:** According to TMLG's records, the Account is a valid debt voluntarily entered into by Plaintiff with Discover.
   **Plaintiff's Response:** The debt, as stated by TMLG, is allegedly owed to Discover, which, even if valid, is irrelevant to this case since TMLG has failed to prove its relation to the debt and right of collections at the time of the credit reviews or at all and has further failed to explain why its credit reviews of Plaintiff's credit file were conducted prior to and without communication of such debt to Plaintiff.

6. **Defendant's Statement:** The one and only time TMLG pulled Plaintiff's credit report; it was for the use of information in connection with a credit transaction involving Plaintiff and involving the review or collection of Plaintiff's Account.

**Plaintiff's Response:** Plaintiff denies TMLG's allegations that it conducted a review of Plaintiff's credit file one and only one time or that it was in connection with a credit transaction involving Plaintiff and involving the review or collection of Plaintiff's Account. While TMLG's motives for the credit reviews was ultimately debt collection, Plaintiff denies that at the time of the credit reviews TMLG had ownership, authority or even definite intent to collect on a debt owed by Plaintiff. TMLG's mere intent to evaluate Plaintiff's credit file for possible future collections is not a permissible purpose covered under the FCRA or CCRAA. TMLG was the attorney representing Discover in the State action brought against Plaintiff and as opposing counsel it had no right to even a onetime review of Plaintiff's credit file.

7. **Defendant's Statement:** TMLG mailed an initial demand letter to Plaintiff on or about October 8, 2010 ("Letter") which gave him full and proper notice of what debt TMLG was seeking collection on and his right to request verification or validation.

**Plaintiff's Response:** Plaintiff denies receipt of TMLG's alleged initial demand letter of October 8, 2010, which even if true, was sent untimely, at least two days after TMLG's credit reviews.

8. **Defendant's Statement:** The Letter was the first communication and contact between TMLG and Plaintiff regarding the Account.

**Plaintiff's Response:** Plaintiff denies receipt of TMLG's alleged initial demand letter of October 8, 2010, which even if true, was sent untimely, at least two days after TMLG's credit reviews.

9. **Defendant's Statement:** The Letter satisfied all notice and disclosure requirements under the FDCPA. The Letter detailed out: the debt owing; the name of the creditor to whom it was owing; informed Plaintiff she had 30 days in which to dispute the debt in whole or in part; that if the debt within the 30 days, verification would be provided; if the debt was not disputed it would be presumed valid; or any portion thereof was disputed and that the name and address of the original creditor, if different from the current creditor, would be provided upon request within the same 30 days period of time.

**Plaintiff's Response:** Plaintiff denies receipt of TMLG's alleged initial demand letter of October 8, 2010, which even if true, was sent untimely, at least two days after TMLG's credit reviews. Plaintiff should have been notified and the debt should have been validated prior to any collection activity, which includes the credit reviews. This measure should have been taken to avoid any unjustly credit reviews and potential, undeserved harm to Plaintiff's credit.

10. **Defendant's Statement:** There has been no subsequent collection activity on the Account by TMLG.

**Plaintiff's Response:** Plaintiff agrees with TMLG's statement that there has been no subsequent collection activity against Plaintiff by TMLG, which only proves Plaintiff's claims that TMLG had no ownership or authority over the alleged debt at the time of the

credit reviews or at all and that its credit reviews were done for the mere purpose of checking on the collectability of the alleged debt owed to Discover.

11. **Defendant's Statement:** Since TMLG is exempt from liability under the Rosenthal Act, TMLG cannot be held liable for Tort in Se allegations predicated upon supposed violations of the Rosenthal Act.
   **Plaintiff's Response:** As established in section 2 of this Statement of Genuine Disputes, TMLG is a debt collector pursuant to the Rosenthal Act and is not exempt from liability.


Dated: July 3, 2012                                        Respectfully submitted,


                                                           By:*/s/ Arshak Bartoumian*
                                                           Arshak Bartoumian,
                                                           Attorney For Plaintiff